[Civ. No. 38648. Second Dist., Div. Three. Mar. 22, 1972.]

LOS ANGELES COUNTY FIREFIGHTERS LOCAL 1014, AFL-CIO, Plaintiff and Respondent, v.
CITY OF MONROVIA, Defendant and Appellant.

290

**COUNSEL**

Paul E. Garber, City Attorney, Hill, Farrer & Burrill, Edwin H. Franzen, Stanley E. Tobin, Jack R. White and Kyle D. Brown for Defendant and Appellant.

Stanford D. Herlick, County Counsel (San Bernardino), as Amici Curiae on behalf of Defendant and Appellant.

Bodle, Fogel, Julber & Reinhardt, Bodle, Fogel, Julber, Reinhardt & Rothschild, George E. Bodle, Loren R. Rothschild and Joel N. Klevens for Plaintiff and Respondent.

**OPINION**

**SCHWEITZER, Acting P. J.**—This case presents the question of whether a city which recognizes its employees association as "the only organized group who can speak on behalf . . . of City employees" in their employment relations must recognize an outside union as the representative of those employees who are members thereof.

*Facts*

Since 1953 the employees of the City of Monrovia have been represented in their employment relations with the city by the Monrovia Municipal Employees Association. The association has a written constitution and by-laws; its membership is open on a voluntary basis to all employees of the city; and it is governed by an elected board of directors, a specified number of which must be from each department of the city. The procedure employed by the city in handling employment relations has been that during March and April of each year the association would appoint representatives from each department of the city to confer with representatives of the city on wages, salaries, hours and working conditions on behalf of the employees of their respective departments; the results of these conferences were then reported to the city council; after review thereof and public hearings thereon the city council by resolution would determine the wages and working conditions of each employee for the following fiscal year.

By resolution dated March 21, 1961, the city council codified portions of the foregoing procedure and policy in its Administrative Manual of Policies and Procedures, providing therein that: ". . . The Council . . . , in all matters affecting the discussion and negotiation of wages and salaries, *recognizes the Monrovia Municipal Employees Association as the only organized group who can speak on behalf of the interests of the greatest number of City employees.*" (Italics added.)

In May 1970 the president of plaintiff union notified the city by letter

that the union represents a majority of the employees of the Monrovia Fire Department, and that the union *"requests recognition as the representative of the employees of the Monrovia Fire Department* for the purposes of presenting grievances and recommendations regarding wages, salaries, hours and working conditions to the City Council and to discuss the same with the City Council." (Italics added.) The record discloses that 20 of the 21 city firefighters were members of and desired that the union be recognized as their representative.

The city council took the request under submission. Thereafter, without formally recognizing the union, the city permitted union representatives to participate in salary and wage discussions. Before decisive action by the city on the union's request for formal recognition, the union filed the instant proceeding, a petition for writ of mandate seeking to compel the city: (1) to recognize the union as the representative of the members of the union employed by the city's fire department; (2) to recognize the union as a "recognized employee organization" within the meaning of the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510[1]); and (3) to meet and confer in good faith with representatives of the union with respect to wages, hours and other terms and conditions of employment of the firefighters of the city who are members of the union.

In seeking the writ of mandate the union relied on two statutes, the Firefighters Act (Lab. Code, §§ 1960-1963) and the aforementioned Meyers-Milias-Brown Act. (Gov. Code, §§ 3500-3510.[2]) The sole evidence presented at trial consisted of the declarations of the parties together with attached exhibits. After trial findings of fact and conclusions of law were signed and judgment entered granting a peremptory writ of mandate as prayed, the court expressly stating in its conclusions of law that the union was entitled to the relief under the two cited statutes. The city appeals from the judgment.

### The Firefighters Act

Section 1960 of the Labor Code provides that no incorporated city "shall prohibit, deny or obstruct the right of firefighters to join any bona fide labor organization of their own choice."

Section 1962 provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to present grievances and recommendations regarding wages, salaries, hours, and working

---

[1]Amended by Statutes 1971, chapter 254, page 401, effective March 4, 1972.
[2]See footnote 1, *ante.*

conditions to the governing body, and to discuss the same with such governing body, through such an organization. . . ."

The Firefighters Act clearly places the city under an obligation to permit its firefighters to join a union, to refrain from interfering with the union in its activities on behalf of the city employees who are members thereof, and to consider grievances and recommendations submitted by the union on behalf of such employees. (See *International Assn. of Fire Fighters* v. *City of Palo Alto,* 60 Cal.2d 295, 300 [32 Cal.Rptr. 842, 384 P.2d 170].) So long as the city extends these rights to its employees and the union, the Firefighters Act is not violated.

As heretofore noted, the city's administrative manual contains a statement of policy providing that the city "recognizes the . . . Employees Association as the *only* organized group who can speak on behalf" of its employees. (Italics added.) The city points to evidence that notwithstanding this stated policy, it maintained an "open door policy" to all employees and employee organizations, including the plaintiff union, to present grievances and to make recommendations regarding wages, salaries, hours and working conditions, and argues that as a result it is meeting its obligations under the Firefighters Act.

■ The union offered evidence that this informal policy of recognition was not followed and the court so found. This finding of fact is binding on appeal even though the evidence in support thereof is entirely documentary. (*Griffith Co.* v. *San Diego Col. for Women,* 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349].) But regardless of this conflict in evidence and the finding of the trial court thereon, we hold that under the facts of this case the quoted policy from the city's administrative manual, even though not strictly adhered to, as contended by the city, conflicts with the Firefighters Act. It relegates the union to a secondary position in bargaining which conceivably would reduce its effectiveness. As a result we hold that the following conclusions of law, as modified by words in brackets, are correct:

"3. The Union was entitled to request, under Labor Code, Sections 1960 through 1963, that the City recognize the Union as the representative of [those] firefighters [who are members of the union], and that it permit [said] firefighters, through the Union, to present grievances and recommendations regarding wages, salaries, hours, and working conditions to, and to discuss the same with, the Council; and the Union was entitled to have such request granted by the City.

"4. The Union is entitled to recognition by the City as the bona fide

labor organization of the firefighter's choice under Labor Code, Sections 1960 through 1963.

"5. The City has a duty to recognize the Union under Labor Code, Sections 1960 through 1963."

These conclusions of law as modified are consistent with the judgment and the peremptory writ of mandate issued pursuant thereto.

### The Meyers-Milias-Brown Act

In 1961 the Legislature enacted the Brown Act (Gov. Code, §§ 3500-3509, effective September 15, 1961), under which it recognized the right of public employees to join organizations of their own choice and to be represented by such organizations in their employment relationships with public agencies. In 1968 the act was amended and expanded, and became known as the Meyers-Milias-Brown Act. (Gov. Code, §§ 3500-3510.[3])

In its conclusions of law the trial court stated that under this act, as amended, the city has a duty to recognize, meet and confer with the union as the representative of the firefighters on all matters relating to employment conditions and employer-employee relations, and that the city's refusal to do so constitutes an abuse of discretion.

Section 3500 sets forth the legislative purpose and intent of the act. It expressly states: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations." The city contends that this section specifically exempts it from the application of the act since its preexisting rules and policies "provide for other methods of administering employer-employee relations."

We do not agree. If the city's argument had merit, every public agency would be exempted; no agency can operate without some employer-employee rules and policies. Surely the Legislature had no intent to exempt from the law those public agencies having arbitrary and unreasonable rules and regulations. Section 3500 expresses the legislative intent very clearly: "This chapter is intended . . . to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed." The act

---

[3]See footnote 1, *ante.*

then provides that public employees have "the right to form, join, and participate in the activities of employee organizations of their own choosing," "the right to refuse to join or participate in the activities of employee organizations," and "the right to represent themselves individually in their employment relations." (§ 3502.) It then sets forth provisions for the organization, operation, scope of representation and rights of employee organizations (§§ 3503-3505) and prohibits discrimination by public agencies and employee organizations against employees. (§ 3506.) The act recognizes that public agencies might have or might adopt personnel rules and regulations; it provides for the adoption by public agencies of "reasonable rules and regulations after consultation in good faith with representatives of an employee organization . . . for the administration of employer-employee relations." (§ 3507.[4])

It appears from our examination of the entire act that the Legislature intended by it to set forth reasonable, proper and necessary principles which public agencies must follow in their rules and regulations for administering their employer-employee relations, including therein specific provisions for the right of public employees, as individuals and as members of organizations of their own choice, to negotiate on equal footing with other employees and employee organizations, without discrimination; that the Legislature did not intend thereby to preempt the field of public employer-employee relations except where public agencies do not provide reasonable "methods of administering employer-employee relations through . . . uniform and orderly methods of communication between employees and the public agencies by which they are employed" (§ 3500); and that if the rules and regulations of a public agency do not meet the standard established by the Legislature, the deficiencies of those rules and regulations as to rights, duties and obligations of the employer, the employee, and the employee organization, are supplied by the appropriate provisions of the act.

■ Here, the policy set forth in the city's administrative manual that the city "recognizes the . . . Employees Association as the only organized group who can speak on behalf of the . . . City employees" clearly does not meet the standards prescribed by the Legislature. The city argues that its unwritten "open door policy," under which individuals and organization representatives were permitted to speak, constitutes sufficient compliance with the act. We do not agree. First, as heretofore pointed out with

---

[4]Section 3507 was amended in 1970, effective November 23, 1970, after trial of this case but before judgment was entered, to add thereto: "No public agency shall unreasonably withhold recognition of employee organizations."

respect to the Firefighters Act, it places individuals and nonrecognized organizations in a secondary position, not in parity with the "recognized" organization; second, individuals and organizations might not be aware of their right to speak under the "open door policy"; and third, neither the policy set forth in the administrative manual nor the "open door policy" extends to individuals and employee organizations the rights, duties and obligations as provided by the act.

Accordingly, we hold that the following conclusions of law, as modified by words in brackets, are correct:

"6. The Union was entitled to request, under the Meyers-Milias-Brown Act (Government Code, Sections 3500 through [3510][5]), that the City acknowledge the Union as 'recognized employee organization' representing [those] firefighters [who are members of the union] in their employment relationship with the City on all matters concerning wages, hours, and working conditions, and that the City meet and confer in good faith with the Union on all matters within the scope of such representation; and the Union was entitled to have such request granted by the City.

"7. The City has a duty to recognize the Union under Government Code, Sections 3500, et seq., Meyers-Milias-Brown Act."

These conclusions of law as modified are consistent with the judgment and the peremptory writ of mandate issued pursuant thereto.

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied April 10, 1972, and appellant's petition for a hearing by the Supreme Court was denied May 23, 1972. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

[5]See footnote 1, *ante.*