[Civ. No. 15257. Fourth Dist., Div. Two. May 18, 1976.]

HUNTINGTON BEACH POLICE OFFICERS' ASSOCIATION,
Plaintiff and Respondent, v.
CITY OF HUNTINGTON BEACH et al., Defendants and Appellants.

494

---

COUNSEL

Don P. Bonfa, City Attorney, and William S. Amsbary, Deputy City Attorney, for Defendants and Appellants.

Lemaire, Faunce & Katznelson, Edward L. Faunce and Steven R. Pingel for Plaintiff and Respondent.

## Opinion

TAMURA, J.—Plaintiff, Police Officers' Association of Huntington Beach, sought a writ of mandate in the court below to compel the City of Huntington Beach, its councilmen and chief of police to reinstate a four-day, ten-hour-day work week schedule ("Ten-Plan") for police personnel and to meet and confer in good faith with respect to any proposed changes in the schedule. Following hearing and submission of the matter on the petition, demurrer, answer, and memoranda of authorities, the court entered judgment directing issuance of a peremptory writ of mandate as prayed for by plaintiff. Defendants appeal from the judgment.

The pertinent facts are as follows:

The city is a charter city. Plaintiff is a recognized employee organization of the city. On July 26, 1971, a memorandum of agreement relating to wages, hours, and the terms and conditions of employment of personnel in the city police department was negotiated by plaintiff and the city pursuant to the Meyers-Milias-Brown Act (Gov. Code, ch. 10, div. 4, tit. 1;[1] hereafter "MMB Act") and an implementing "Employer-Employee Relations Resolution" ("EER Resolution") previously adopted by the city council. Article XI of the memorandum of agreement provides: "The 'Ten-Plan' shall be placed into effect for employees designated by the Chief of Police the first of the month following approval by the City Administrator." Shortly following city council approval and ratification of the agreement, the chief of police placed the Ten-Plan into effect for all police department personnel.[2]

On April 16, 1974, the chief of police notified his department supervisors that effective September 30, 1974, all personnel other than patrolmen would revert to a five-day, eight-hour-day work schedule. In August 1974, personnel in the detective bureau sent a memorandum to the chief requesting a meeting to discuss the return to a five-day work

---

[1] All statutory references in this opinion are to the Government Code unless otherwise indicated.

[2] The July 26, 1971, memorandum of agreement was for a term commencing July 1, 1971, and ending June 30, 1972. On June 28, 1972, a new agreement for a term commencing July 1, 1972, and ending July 30, 1975, was negotiated and ratified by the city council. The new agreement continued in effect the provision relating to the Ten-Plan.

week. On October 14, 1974, in a memorandum setting forth the reasons for their request, the same group asked the chief to reinstate the TEN-PLAN. The city personnel director responded to the request by stating that the work schedule was neither negotiable nor a proper subject for grievance. Thereupon, on October 18, 1974, plaintiff's representative filed a formal grievance with the personnel director complaining that the unilateral action of the chief of police in discontinuing the TEN-PLAN constituted a violation of the memorandum of agreement and of the MMB Act. The personnel director responded by letter dated November 20, 1974, stating that the subject matter in controversy "does not constitute a matter for grievance. . . [¶] As a matter involving the policy of police protection and service with the City, management prerogatives and for other related reasons, the purported dispute is not subject to the grievance procedures." Plaintiff thereupon filed the instant mandate proceeding.

Defendants attack the judgment below on two grounds: (1) The court lacked jurisdiction to grant the relief sought because plaintiff failed to exhaust its administrative remedies and (2) the subject of work schedule had been excluded from the meet and confer process both by the EER Resolution and the terms of the memorandum of agreement. From the analysis which follows, we have concluded that defendants' contentions lack merit and that the judgment should be affirmed.

I

Defendants urge that plaintiff's failure to exhaust the grievance procedure prescribed by the city's personnel rules and regulations or to pursue a remedy provided by the EER Resolution precluded the court from granting the judicial relief sought. The contention lacks merit.

A written memorandum of understanding negotiated pursuant to the MMB Act is, upon approval of the city council, binding upon the parties and performance of the city's obligations under the agreement may be enforced by the traditional mandate proceeding to compel performance of a ministerial duty or to correct an abuse of official discretion. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale,* 15 Cal.3d 328, 343-344 [124 Cal.Rptr. 513, 540 P.2d 609].) Although the trial court has considerable discretion in deciding whether to grant this form of relief, where plaintiff shows compliance with the requirements for the writ,

including lack of a plain, speedy and adequate remedy in the usual course of the law, he may be entitled to the writ as a matter of right. (*Flora Crane Service, Inc.* v. *Ross,* 61 Cal.2d 199, 203 [37 Cal.Rptr. 425, 390 P.2d 193]; *May* v. *Board of Directors,* 34 Cal.2d 125, 133-134 [208 P.2d 661].)

In the case at bench, despite the showing made by plaintiff, defendants contend that the court had no jurisdiction to grant the relief requested because plaintiff failed to exhaust its administrative remedies. Specifically, defendants point to plaintiff's admitted failure to exhaust the grievance procedure prescribed by rule 19 of the city's personnel rules and regulations. They also urge that plaintiff should have pursued an appeal procedure prescribed by the EER Resolution.

Rule 19 of the city's personnel rules and regulations pertains to the settlement of grievances in nondisciplinary matters. It provides for a five-step procedure commencing with an informal consultation between an employee and his supervisor and culminating with an appeal to the personnel board if efforts to settle the grievance at lower levels fail. Step four consists of the formal submission of a grievance to the personnel director. Plaintiff pursued the grievance procedure through step four but did not invoke step five.

Plaintiff's failure to exhaust the grievance procedure of rule 19 did not preclude it from seeking judicial relief. For the purpose of rule 19 a grievance is defined as "a dispute concerning the 'interpretation or application of any provision of the city's Employer-Employee Relations Resolution, or any provision of this resolution or any departmental rule governing personnel practices or working conditions, . . ." The present dispute pertained to the city's obligations under the memorandum of agreement and the MMB Act; it did not concern the interpretation or application of the EER Resolution, the personnel rules and regulations, or a departmental rule. Since the instant controversy is not a grievance within the meaning of rule 19, the procedure therein provided for settlement of grievances was not applicable and failure to pursue it to its ultimate conclusion does not preclude plaintiff from seeking judicial relief. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra,* 15 Cal.3d 328, 342; *Ramos* v. *County of Madera,* 4 Cal.3d 685, 691 [94 Cal.Rptr. 421, 484 P.2d 93].)

Defendants virtually concede the inapplicability of the grievance procedure prescribed by the city's personnel rules and regulations by contending that plaintiff's proper administrative remedy was to file an "appeal" with the personnel board under section 14-4 of the EER Resolution. That section provides that "any decision of the City Administrator or Personnel Director made pursuant to this resolution may be appealed to the Personnel Board" and "any decision of the Personnel Board made pursuant to this resolution may be appealed to the City Council."[3] The contention that plaintiff's failure to pursue that course of action deprived the court of jurisdiction to entertain the mandate proceeding must also be rejected. Section 14-4 simply provides that an appeal may be taken; it sets forth no procedure pursuant to which an appeal is to be heard. As explained in *Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra,* 15 Cal.3d 328, a procedure "which provides merely for the submission of a grievance form, without the taking of testimony, the submission of legal briefs, or resolution by an impartial finder of fact is manifestly inadequate to handle disputes of the crucial and complex nature of the instant case, which turns on the effect of the underlying memorandum of understanding itself." (At pp. 342-343.)

Moreover, the record reveals that further pursuit of either the grievance procedure or an appeal under section 14-4 of the EER

---

[3] EER Resolution section 14-4 provides:

"14-4. DECISION. APPEAL FROM. Any provision of this resolution to the contrary notwithstanding, any decision of the City Administrator or Personnel Director made pursuant to this resolution may be appealed to the Personnel Board by any employee organization or self-representing employee, adversely affected by such determination, or by the City Council.

"Any decision of the Personnel Board made pursuant to this resolution may be appealed to the City Council by any employee organization, or self-representing employee, adversely affected by such determination, or by the City Council.

"This section shall not apply to any determination made by either the City Administrator or the Personnel Board in connection with the impasse procedures pursuant to Section 9-2 of this resolution.

"Notice in writing by mail of all determinations of the City Administrator or Personnel Director or the Personnel Board pursuant to this resolution must be served upon the employee organization or the self-representing employee concerned, and the City Council, within five (5) days after such determination is made. No appeal from any such determination may be made unless a written notice of appeal is filed with the Personnel Board, in the case of an appeal to the Personnel Board, or with the City Council, in the case of an appeal to the City Council, within ten (10) days following the date of service of notice of such determination, as provided herein.

"The date of mailing of such notice of determination, as provided herein, shall be conclusively deemed the date of service thereof."

Resolution would have been futile. Throughout the entire controversy the city steadfastly maintained that a change in the application of the TEN-PLAN was a matter of management prerogative and was neither negotiable nor a proper subject for grievance. ■ Where the administrative agency has made it clear what its ruling would be, idle pursuit of further administrative remedies is not required by the exhaustion doctrine. (*Ogo Associates* v. *City of Torrance,* 37 Cal.App.3d 830, 834-835 [112 Cal.Rptr. 761]. See *Gantner & Mattern Co.* v. *California E. Com.,* 17 Cal.2d 314, 318 [109 P.2d 932].) ■ This was the basis on which the trial court rejected the city's defense that plaintiff failed to exhaust available administrative remedies. The court's minute order decision states: "In view of the position taken by [defendants], the Court would deem it inequitable to require further or other exhaustion of administrative remedies." The trial court's determination is amply supported by the record.

For all the reasons stated, we conclude that the trial court's implied determination that administrative remedies were either unavailable or inadequate or that their further pursuit would have been futile must be upheld.[4]

## II

■ On the merits, the city contends that the TEN-PLAN work schedule has been excluded from the meet and confer requirements of the MMB Act (1) by the provisions of the EER Resolution and (2) by the memorandum of agreement itself.

In support of its argument that the EER Resolution excludes work schedule from the meet and confer process, the city directs our attention to sections 3-11, 3-15, and 5-1 of the EER Resolution. Section 3-11 defines the term "meet and confer in good faith" as the mutual obligation to confer "on matters within the scope of representation." Section 3-15 defines "scope of representation" as meaning all matters relating to the employment relationship "including, but not limited to, wages, hours and other terms and conditions of employment" but excluding "City rights, as defined in section 5." Section 5-1 provides in pertinent part: "Except as otherwise specifically provided in this

---

[4]Findings were not made because they were not requested. It must therefore be presumed that the court made all findings necessary to support its judgment. (4 Witkin, Cal. Procedure, Trial, § 310, p. 3118, and cases there cited.)

resolution, or amendments or revisions thereto, the city has and retains the sole and exclusive rights and functions of management, including, but not limited to, the following: . . . (c) To schedule working hours, allot and assign work. [¶] (d) To establish, modify or change work schedule or standards." The city argues that under the foregoing provisions of the EER Resolution, work schedule, including the TEN-PLAN, has been effectively excluded as a subject of the meet and confer process.

Although the provisions of the EER Resolution to which we have been directed purport to exclude work hour schedules from the scope of representation, the attempted exclusion must yield to the meet and confer requirements of the MMB Act.

██ With respect to matters of statewide concern, charter cities are subject to and controlled by applicable general state law if the Legislature has manifested an intent to occupy the field to the exclusion of local regulation. (*Pac. Tel. & Tel. Co.* v. *City & County of S.F.,* 51 Cal.2d 766, 768-769 [336 P.2d 514]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 369-370 [125 P.2d 482, 147 A.L.R. 515]. See *Bishop* v. *City of San Jose,* 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137]; *Smith* v. *City of Riverside,* 34 Cal.App.3d 529, 534 [110 Cal.Rptr. 67].) ██ Labor relations in the public sector are matters of statewide concern subject to state legislation in contravention of local regulation by chartered cities. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 295 [32 Cal.Rptr. 830, 384 P.2d 158].)

██ In the case at bench the provisions of the EER Resolution purporting to exclude the subject of working hours from the meet and confer process are in direct conflict with provisions of the MMB Act imposing upon governing bodies of public agencies an obligation to meet and confer in good faith regarding wages, hours and other terms and conditions of employment. (§ 3505.[5]) Thus the question is whether the

---

[5]The following is a comparison of the pertinent provisions of the EER Resolution upon which the city relies and the counterpart provisions of the MMB Act.

Section 3-11 of the EER Resolution provides: "3-11. MEET AND CONFER IN GOOD FAITH shall mean the performance by duly authorized city representatives and duly authorized representatives of a recognized employee organization of their mutual obligation to meet at reasonable times and to confer in good faith in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation. This does not compel either party to agree to a proposal or to make a concession."

Section 3505 provides: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly

Legislature intended to reserve to local agencies the power to adopt labor relations regulations inconsistent with otherwise applicable provisions of the MMB Act.[6] Although the Legislature did not intend to preempt all aspects of labor relations in the public sector,[7] we cannot attribute to it

designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.

" 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation or ordinance, or when such procedures are utilized by mutual consent."

Section 3-15 of the EER Resolution provides: "3-15. SCOPE OF REPRESENTATION shall mean all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours and other terms and conditions of employment. City rights, as defined in Section 5 herein, are excluded from the scope of representation."

Section 5-1 of the EER Resolution provides in pertinent part: "Except as otherwise specifically provided in this resolution, or amendments or revisions thereto, the city has and retains the sole and exclusive rights and functions of management, including, but not limited to, the following: . . . [¶] (c) To schedule working hours, allot and assign work. [¶] (d) To establish, modify or change work schedule or standards."

Section 3504 provides: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order."

[6]The precise question before us appears to be one of first impression. In *Fire Fighters Union* v. *City of Vallejo*, 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971], the court did not pass upon the question because the language of the city charter provision closely paralleled the language of the MMB Act. Similarly in *Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra*, 15 Cal.3d 328, 334, footnote 4, the court did not reach the question here presented because the City of Glendale had adopted a format for labor management relations essentially identical to that set out in the MMB Act.

[7]Section 3500 setting forth the legislative purpose and intent contains the following qualification: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies which provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter. This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

an intention to permit local entities to adopt regulations which would frustrate the declared policies and purposes of the MMB Act. Were we to uphold the city's regulation in question, local entities would, as Professor Grodin observed, be "free to adopt rules prohibiting employees from joining unions, to decline recognition to any organization, and to refuse to meet or confer with recognized organizations on matters pertaining to employment relations—in short, to undercut the very purposes which the act purports to serve. Such an interpretation is inconsistent with the general objectives of the statute as declared in the preamble and with the mandatory language which appears in many of the sections." (Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 724-725.) In the words of Professor Grodin, the power reserved to local agencies to adopt rules and regulations was intended to permit supplementary local regulations which are "consistent with, and effectuate the declared purposes of, the statute as a whole." (Grodin, *supra,* at p. 725.)

In *Los Angeles County Firefighters Local 1014* v. *City of Monrovia,* 24 Cal.App.3d 289 [101 Cal.Rptr. 78], the court held that a city which had by resolution recognized a city employee association as "the only organized group" authorized to speak on behalf of city employees was nevertheless obligated to recognize an outside union as the representative of those employees who were its members. From a review of the entire MMB Act, the reviewing court determined that the Legislature intended "to set forth reasonable, proper and necessary principles which public agencies must follow in their rules and regulations for administering their employer-employee relations . . . ." and concluded that "if the rules and regulations of a public agency do not meet the standard established by the Legislature, the deficiencies of those rules and regulations as to rights, duties and obligations of the employer, the employee, and the employee organization, are supplied by the appropriate provisions of the act." (24 Cal.App.3d at p. 295.)

We agree with the foregoing authorities' assessment of the legislative intent. The city's EER Resolution in question recites that it was adopted pursuant to section 3507. That section authorizes a public agency to "adopt reasonable rules and regulations . . . for the administration of employer-employee relations under this chapter . . . ." A regulation which would cut off communication between employer and employee concerning establishment of a schedule of working hours is not a "reasonable" regulation for the administration of labor relations under

the MMB Act. The Legislature has declared that the MMB Act is intended "to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of *uniform and orderly methods of communication* between employees and the public agencies by which they are employed." (§ 3500; italics supplied.) In furtherance of that purpose, the Legislature has in mandatory language imposed upon public agencies the duty to "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations" and to "consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action." (§ 3505.) The city's EER Resolution purporting to render work schedule nonnegotiable is in conflict with the declared purpose of the MMB Act and the mandatory language of section 3505. It is therefore invalid.

Nor may the city validly justify its attempts to make work schedule a nonnegotiable prerogative of management on the theory that the subject pertains to "organization" of a city department. Section 3504 provides: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order."

In *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608, the court rejected the city's contention that schedule of work hours for city fire fighters affected "organization" of the service and was therefore nonnegotiable. The court explained the statutory exclusion from "scope of representation" of "consideration of the merits, necessity, or organization of any service" as merely indicating a legislative intention to forestall expansion of the phrase "wages, hours, and other terms and conditions of employment" to include "more general managerial policy decisions." On the other hand, the court noted that the phrase "wages, hours, and other terms and conditions of employment" was taken directly from the National Labor Relations Act; a considerable body of law has developed under the federal statute defining the scope of that term; and "working hours and work days" have been held to be negotiable subjects under the National Labor Relations Act. Accordingly, the court concluded that schedule of working hours was a

mandatory negotiable subject under the MMB Act. (12 Cal.3d at pp. 616-618.)

The city's reliance upon *American Federation of State etc. Employees* v. *County of Los Angeles,* 49 Cal.App.3d · 356 [122 Cal.Rptr. 591], is misplaced. That case involved a dispute over job classifications under a civil service system established pursuant to the county charter. The court held that under the express qualification in section 3500, a procedure for job classification governed by county charter and civil service regulations enacted pursuant thereto is not intended to be superseded by the MMB Act. The case at bench does not involve provisions of a city charter regulating a civil service system.

■ Defendants' remaining contention consists of a bare assertion that the parties have "by contract excluded the 'TEN-PLAN' at this time from the meet and confer process." The point is made without discussion or supporting argument. Failure to support a point by legal argument may be deemed to be an abandonment of the contention. (6 Witkin, Cal. Procedure, Appeal, § 425, pp. 4391-4392.) We may therefore properly ignore the contention.

Nevertheless we have examined the memorandum of agreement in an attempt to ascertain a possible basis for the city's contention. We assume that the city's position, though not articulated, is that the memorandum of understanding should be construed to mean the chief of police was to have the sole discretion, without meeting and conferring with plaintiff, to decide which employees should be under the TEN-PLAN. Although the agreement inferentially recognizes the ultimate authority of the chief to decide to what extent the TEN-PLAN shall be operative in his department, it does not, either expressly or by implication, provide that changes in policy affecting the application of the plan shall not be subject to the meet and confer process.

The undisputed facts are that pursuant to the memorandum of agreement the plan was put into effect for all police personnel and remained in effect for all personnel until the chief unilaterally terminated the plan except as to patrolmen. The change in policy was effected without affording plaintiff an opportunity to meet and confer. The action

taken by the chief in disregard of plaintiff's request to meet and confer was in violation of section 3505 of the MMB Act.

Judgment is affirmed.

Gardner, P. J., and Fogg, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.