[L.A. No. 30878. Dec. 29, 1978.]

LOS ANGELES COUNTY CIVIL SERVICE COMMISSION,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
LOS ANGELES COUNTY EMPLOYEES UNION, LOCAL 434,
SERVICE EMPLOYEES INTERNATIONAL UNION,
AFL-CIO et al., Real Parties in Interest.

56

## COUNSEL

John H. Larson, County Counsel, William F. Stewart, Joe Ben Hudgens and Steven L. Houston, Deputy County Counsel, for Petitioner.

John B. Clausen, County Counsel (Contra Costa), and Arthur W. Walenta, Jr., Assistant County Counsel, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Geffner & Satzman and Leo Geffner for Real Parties in Interest.

## OPINION

**NEWMAN, J.**—In this case we must reconcile two sections of the Meyers-Milias-Brown Act (MMBA).[1] Section 3500 declares that the MMBA shall not supersede local charters, ordinances, and rules that establish civil service systems or other methods of administering employer-employee relations.[2] Section 3505 requires governing bodies of local agencies or their properly designated representatives to meet and

---

[1] Government Code sections 3500-3510. All statutory references are to the Government Code.

[2] Section 3500 provides: "It is the purpose of this chapter to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations. It is also the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by such organizations in their

confer as to conditions of employment with representatives of employee organizations.[3]

■ Since we conclude that the Legislature did not intend to exempt counties with civil service systems from the meet-and-confer requirement, we also consider the constitutionality of requiring chartered counties and cities to comply with the MMBA. ■ We rule that the meet-and-confer requirement is not inconsistent with a charter provision that requires a civil service commission to hold public hearings before amending its rules. Therefore requiring Los Angeles County to meet and confer with employee unions before amending its civil service rules does not, we hold, offend the home-rule provisions of the California Constitution.

Article IX of the Los Angeles County Charter provides for the civil service. The civil service commission, created by section 30 of the charter, shall "prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law. . . ." (Charter § 34.) Those rules are to provide: "For layoffs or for mandatory reductions in lieu of layoff . . . for reasons of economy or lack of work" (§ 34(18)); "For transfer from one position to a similar position in the same class and grade and

employment relationships with public agencies. Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies which provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter. This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

[3]Section 3505 provides: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.

" 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation or ordinance, or when such procedures are utilized by mutual consent."

for reinstatement within one year of persons who without fault or delinquency on their part are separated from the service or reduced" (§ 34(10)); "For the discharge or reduction in rank or compensation after appointment or promotion is complete . . ." (§ 34(13)); and "For the adoption and amendment of rules only after public notice and hearing" (§ 34(16)).[4]

In February and March 1976 the commission held hearings concerning amendments to its rules governing layoffs and grade reductions in lieu of layoff. It sent notice of the hearings to several employee unions, but union representatives attended under protest. They claimed that section 3505 of the MMBA required the commission to meet and confer before amending the rules, which the commission refused to do.

Without waiving the asserted right to meet and confer the union representatives expressed their views at the hearings. They supported layoffs based on straight seniority. County management preferred reducing in grade higher ranked employees to displace lower-ranked (though possibly more senior) employees. Displaced employees would be laid off. After the hearings the commission adopted amendments supporting management's position.[5]

In April 1976 the unions petitioned the superior court for a writ of mandate to compel the commission to set aside the amended rules and to meet and confer before adopting any rules regarding layoffs or reductions in lieu of layoff. The court issued the writ. In this proceeding we consider the propriety of the lower court's action.

The commission maintains that, because of the nonpreemption language in section 3500, it should not be required to comply with provisions of the MMBA that interfere with its administration of employer-employee relations. Further it asserts that, under article XI, sections 3 and 4 of the California Constitution, the Legislature does not have authority to require bargaining over matters governed by the county charter that,

---

[4]The commission complied with charter section 34(16) by adopting its rule 27.02: "After giving at least seven business days' notice by posting on the official bulletin board and after holding a public hearing thereon, the Commission may amend these Rules or adopt new Rules."

[5]As a result of testimony at the hearing by a group of individual employees, apparently not representing any union, the commission added a provision permitting employees whose pay would be greatly decreased by a proposed grade reduction to elect to be laid off instead.

except for the charter, would be within the scope of representation under the MMBA.[6]

*The meaning of "meet and confer"*

■ At the outset we note that a meet-and-confer session amounts to much more than the public hearing authorized by the Los Angeles County Charter. Section 3505 of the MMBA requires governing bodies or their representatives to "meet and confer [with employee representatives] in good faith regarding wages, hours, and other terms and conditions of employment" and to "consider fully" such employee presentations. Section 3505.1 provides that, if the representatives successfully reach an agreement, they shall jointly prepare a nonbinding memorandum of understanding.[7]

The meet-and-confer requirement means that "a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year" (§ 3505). Thus a public agency must meet with employee representatives (1) promptly on request; (2) personally; (3) for a reasonable period of time; (4) to exchange information freely; and (5) to try to agree on matters within the scope of representation. Though the process is not binding, it requires that the parties seriously "attempt to resolve differences and reach a

---

[6]Article XI, section 3, subdivision (a) provides: "For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question . . . . County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith. The provisions of a charter are the law of the State and have the force and effect of legislative enactments."

Section 4, subdivision (g) provides: "Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided."

[7]Section 3505.1 provides: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a written memorandum of such understanding, which shall not be binding, and present it to the governing body or its statutory representative for determination."

common ground." (*Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 25 [129 Cal.Rptr. 126].) The public agency must fully consider union presentations; it is not at liberty to grant only a perfunctory review of written suggestions submitted by a union.

In contrast the character of a public hearing may vary according to "the subject of the hearing, the nature of the board or person holding the hearing and nature of the board or person to be heard." (*Silver B. Co.* v. *State Bd. of Education* (1940) 36 Cal.App.2d 714, 718 [98 P.2d 533].) It may be only "the opportunity to present statements, arguments, or contentions in writing, with or without opportunity to present the same orally." (§ 11425; see also Davis, Administrative Law (6th ed. 1977) pp. 241-247, 272.) As Justice Kaus pointed out in the Court of Appeal opinion vacated by our hearing this case, "a public hearing by a legislative body is often nothing but an order to show cause why tentatively predetermined action should not be taken."

██ *Are counties with civil service systems exempt from the MMBA's meet-and-confer requirement?*

According to its section 3500 the MMBA has two purposes: (1) to promote full communication between public employers and employees; (2) to improve personnel management and employer-employee relations within the various public agencies. Those purposes are to be achieved by establishing methods for resolving disputes over employment conditions and for recognizing the right of public employees to organize and be represented by employee organizations. Section 3500 states, however: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations. . . ." Those words, the commission asserts, exempt it from the meet-and-confer requirement.[8]

---

[8]After the sentence relied on by the commission, the following sentence appears in section 3500: "This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed." The commission does not adequately explain how this sentence would be interpreted if we were to adopt the view that section 3500 exempts counties with civil service systems from the meet-and-confer requirement. On its face the sentence expresses a legislative view that civil service systems will be strengthened through addition of the communication methods established by the MMBA.

The meaning of those words was discussed in *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 500-503 [129 Cal.Rptr. 893], and in *Los Angeles County Firefighters Local 1014* v. *City of Monrovia* (1972) 24 Cal.App.3d 289, 294-295 [101 Cal.Rptr. 78]. Those cases recognize that section 3500 reserves to local agencies the right to pass ordinances and promulgate regulations consistent with the purposes of the MMBA. To extend a broader insulation from MMBA's requirements would allow local rules to undercut the minimum rights that the MMBA guarantees. (See Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 724.)

The commission suggests that civil service rules carve out a particular area in employee-employer relations that should remain untouched by the meet-and-confer requirement. It maintains that, since *Huntington* and *Monrovia, supra,* dealt with general regulations and not civil service rules, they are distinguishable. The danger of undermining employee rights, though, is equally apparent if civil service commissions may freely and without negotiation alter the content of their rules.

The MMBA's stated purpose to guarantee full communication between employers and employees can hardly be met if the commission is not required directly to address employee concerns—concerns that frequently, of course, will be consistent with merit system principles. To carve out for the commission a unilateral authority over civil service rules would place an unjustifiable burden on public employees' right to representation. On the other hand, guaranteeing public employees an opportunity to have their views seriously considered (with the possibility that a nonbinding agreement will be adopted) serves employees' interests without destroying the commission's merit objectives.

Section 3505 extends to all matters "regarding wages, hours, and other terms and conditions of employment." Rules delineating how layoffs will be made clearly fall within the "conditions of employment" phrase of the section. Though section 3504 would permit the commission to consider "the merits, necessity, or organization of any service or activity" without meeting with employee representatives, that exception does not exempt the present rules from the meet-and-confer requirement. As we noted in *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 621-622 [116 Cal.Rptr. 507, 526 P.2d 971], cases under the National Labor Relations Act—persuasive precedents in interpreting the MMBA—indicate that,

though an employer has the right unilaterally to decide that a layoff is necessary, he must bargain about such matters as the timing of the layoffs and the number and identity of employees affected. (*N.L.R.B.* v. *United Nuclear Corp.* (10th Cir. 1967) 381 F.2d 972.)

■ The commission also asserts that it is not a public agency within the meaning of section 3501 subdivision (c)[9] and that it is therefore exempt from the section 3505 meet-and-confer requirement. Section 3501 subdivision (c) defines public agencies to include all governmental subdivisions, city or county, whether chartered or not "[e]xcept as otherwise provided." Section 3505 imposes the duty to meet and confer on the governing bodies of all public agencies and on such commissions or "other representatives as may be properly designated by law." Because we have ruled above that the nonpreemption language in section 3500 does not exempt counties with civil service systems from the MMBA's requirements, section 3501 subdivision (c)'s "[e]xcept as otherwise provided" clause does not apply. The commission fits within section 3505 as a representative designated by the county charter to administer rules for the classified service.

The commission contends that, under the charter, the board of supervisors rather than the commission administers salaries and benefits and that the commission therefore is left with little to bargain with in the meet-and-confer process. (See charter § 11(1).) We believe that Los Angeles County's decision to divide decision-making authority in labor matters does not affect bargaining over the content of layoff rules. As Justice Kaus' opinion noted, the commission's poor bargaining position may be reason for reallocating governmental functions but does not excuse noncompliance with section 3505.

■ Finally the commission argues that a failure to adopt rules tentatively agreed on in the meet-and-confer session would subject it to charges of bad faith. Nothing in the MMBA precludes the commission from altering its rules after the charter-mandated hearing to accommodate more persuasive or previously unexpressed views.[10] A bad faith

---

[9]Section 3501 subdivision (c) provides: "Except as otherwise provided in this subdivision, 'public agency' means every governmental subdivision, every district, every public and quasi-public corporation, every public agency and public service corporation and every town, city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not. . . ."

[10]This case illustrates the kind of views that could be expressed at the hearing by employees not speaking for a union. As we have noted, a group of such employees convinced the commission to add a provision permitting employees whose pay would be greatly decreased by a proposed grade reduction to elect to be laid off instead.

attack must be supported by specific facts, not simply conclusory statements. (Cf. *Placentia Fire Fighters* v. *City of Placentia, supra,* 57 Cal.App.3d at pp. 25-27.)

*Constitutionality of the meet-and-confer requirement in chartered counties*

We have concluded that the MMBA requires the commission to meet and confer regarding its layoff rules. ▮ The commission argues that such a requirement violates the home-rule provisions for charter counties contained in article XI, section 3, subdivision (a) of the California Constitution, which provides in part: "County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith." Further, section 4, subdivision (g) states: "Whenever any county has framed and adopted a charter . . . the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter. . . ." Section 1, subdivision (b) authorizes the governing body of each county to provide for the number, compensation, tenure, and appointment of employees.[11]

When applicable, those provisions nullify state laws inconsistent with county charters. The commission asserts (1) that to require it to bargain with employee unions irreconcilably conflicts with the charter requirement that it hold a public hearing before amending its rules, and (2) that its unique status as an independent administrator of the merit system would be seriously threatened by requiring it to bargain.

We conclude that the meet-and-confer requirement can coexist with the charter-mandated hearing.[12] We see no reason why the commission's integrity as a neutral administrator of the merit system would be

[11]Section 1, subdivision (b) provides: "The Legislature shall provide for county powers and an elected governing body in each county. Except as provided in subdivision (b) of Section 4 of this article, each governing body shall prescribe by ordinance the compensation of its members, but the ordinance prescribing such compensation shall be subject to referendum. The Legislature or the governing body may provide for other officers whose compensation shall be prescribed by the governing body. The governing body shall provide for the number, compensation, tenure, and appointment of employees."

[12]Because we hold that the requirements for a meet-and-confer session and a public hearing do not conflict, we need not decide here if it would be constitutional for the Legislature to require a chartered city or county to comply with a labor law that conflicts

jeopardized by its participating in bargaining sessions with union and management representatives.

The fact that the commission must give notice of what it proposes to do and afford interested parties a chance to be heard does not mean that it must approach the hearing without even a tentative view of what it will do after everyone there has had her or his say. The complexity of matters before rulemaking bodies often does not permit their acting only on input received at a hearing. (*California Optometric Assn.* v. *Lackner* (1976) 60 Cal.App.3d 500, 508 [131 Cal.Rptr. 744].) We can see no inherent conflict between tentative understandings reached at a meet-and-confer session and an objectively conducted public hearing.

The commission's fear that meet-and-confer sessions will compromise its neutral status appears unfounded. The unions' suggestion that layoffs be based on seniority appears no less objective than management's view that layoffs should be based on employee grade. The commission's commendable concern for impartiality will be served by a fair application of whichever standard ultimately is adopted. The civil service system's goal of eliminating arbitrary decisions surely can coexist with a good faith bargaining process.

*Conclusion*

In sum, we hold that MMBA section 3505 does apply to the layoff rules, that it does govern the commission, and that the meet-and-confer requirement is not satisfied simply by convening the charter-mandated public hearing. The MMBA requires that the commission meet and confer directly with employee representatives.

Further, we hold that a meet-and-confer session and a public hearing can coexist and that unions do not relinquish their right to a serious bargaining session merely because they express their views at a hearing.

with its charter. We note, however, that *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158] expressly held that labor relations is an area of statewide concern in which the Legislature can pass laws to be applied in chartered cities. While that case was decided before the 1970 revision of article XI of the California Constitution, *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach, supra,* 58 Cal.App.3d 492, was decided after the revision. *Huntington Beach* adopts the reasoning of *Professional Fire Fighters, Inc.*

To diminish that right would impair the vitality of the MMBA. We see no constitutional barrier to requiring the county here to meet and confer with employee representatives before amending civil service rules that govern layoff procedures.

The superior court's writ compelling the commission to set aside the amendments and to meet and confer with the unions before adopting rules on layoffs and mandatory reductions in lieu of layoff was properly granted. The commission's petition for our writ is denied.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Manuel, J., concurred.