[Civ. No. 46175. First Dist., Div. Three. Dec. 30, 1980.]

CHARLES W. RAE et al., Plaintiffs and Appellants, v.
BAY AREA RAPID TRANSIT SUPERVISORY AND
PROFESSIONAL ASSOCIATION et al.,
Defendants and Respondents.

COUNSEL

Maureen E. McClain, Littler, Mendleson, Fastiff & Tichy and Milton L. Chappell for Plaintiffs and Appellants.

Ronald Yank, Franklin Silver and Carroll, Burdick & McDonough for Defendants and Respondents.

Peter Nussbaum, Neyhart, Anderson & Nussbaum and Earle Putnam as Amici Curiae on behalf of Defendants and Respondents.

OPINION

SCOTT, J.—At issue here is the validity of the agency shop provisions of a collective bargaining agreement between San Francisco Bay Area Rapid Transit District (BART) and Bay Area Rapid Transit Supervisory and Professional Association (BARTSPA). Appellants are nonunion supervisory personnel of BART who sought declaratory and injunctive relief against the agency shop provision of the BARTSPA contract which requires that employees who are not BARTSPA members shall, as a condition of employment, pay BARTSPA an amount equal to its initial administration fee and its regular membership dues. Respondent BART is a public transit district organized under the San Francisco Bay Area Rapid Transit District Act of 1957 (Pub. Util. Code, §§ 28500-29757 [hereinafter BART Act]). Respondent BARTSPA is a labor organization certified as the exclusive bargaining representative for all BART employees in the supervisory unit.

In their complaint, appellants sought a declaration that the agency shop provision was a violation of their rights under the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510 [hereinafter the MMBA]), the BART Act, and the California Constitution. Judgment was entered for

respondents BARTSPA and BART upon the sustaining of their demurrer without leave to amend.

### I. The Meyers-Milias-Brown Act

In 1961 the Legislature enacted the George Brown Act which gave public employees the right to organize and to confer with management as to the terms and conditions of their employment. In 1968 the Legislature adopted the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510), amending and expanding the Brown Act. Currently the MMBA governs employer-employee relations within local public agencies. (*City of Hayward* v. *United Public Employees* (1976) 54 Cal. App.3d 761, 763-764 [126 Cal.Rptr. 710]; see generally Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 720-721.)

Section 3502 of the MMBA proclaims that except as otherwise provided by the Legislature, public employees shall have the right to form, join and participate in the activities of employee organizations of their own choosing, the right to refuse to join or participate in such organizations, and the right to represent themselves individually in their employment relations. Section 3506 prohibits public agencies and employee organizations from interfering with public employees because of the exercise of their rights under section 3502. ■ Those two provisions have been construed to prohibit the extraction of union dues or their equivalent as a condition of continued employment. (*City of Hayward, supra*, 54 Cal.App.3d at p. 764.)

Clearly, then, if the MMBA is applicable to BART employees in the context of this litigation, the agency shop provision of the agreement in question is invalid. Respondents contend, however, that the MMBA does not apply to BART, which derives its existence from the BART Act. Respondents contend that only the BART Act governs the relationship between BART and its employees, and that the act implicitly permits agency shop agreements.

When the Brown Act was enacted, other legislation already existed concerning labor relations for certain public employees, among them the employees of various transit districts, including BART. (See Pub. Util. Code, §§ 28500-29757, Stats. 1957, ch. 1056, § 3, p. 2291.) In particular, Public Utilities Code section 28850 authorized collective bargaining between BART employees and the district. According to

section 3500 of the MMBA, it was not intended to supplant such existing legislation. Section 3500 provides in part: "Nothing contained herein shall be deemed to supersede the provisions of existing state law...which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations...."

■ That BART employer-employee relations are not governed by the MMBA was recently recognized in *San Francisco Bay Area Rapid Transit Dist. v. Superior Court* (1979) 97 Cal.App.3d 153 [158 Cal.Rptr. 627], where the court considered the obligation of the BART board and the employee representative to bargain in good faith, as required by the BART Act. The court rejected the union's reliance on federal law with this footnote: "5. Although federal precedents are not binding on this court, federal precedents have often been invoked by the California courts in construing the Meyers-Milias-Brown Act (*Crowley v. City and County of San Francisco* (1976) 64 Cal.App.3d 450, 458, fn. 1 [134 Cal.Rptr. 533]). But the 'meet and confer' provisions of Government Code section 3505 do not apply to BART, which has its own statutorily prescribed method of administering employer-employee relations (see Gov. Code, § 3500)." (*Id.,* at p. 161.) Furthermore, the court's language in *City of Hayward* suggests that it also viewed the MMBA and transit district statutes as establishing independent systems: "Statutes governing the labor relations of other public employee groups indicate that when the Legislature has authorized union security devices, it has done so with explicit language. *Certain public transit district employees have been granted extensive collective bargaining rights,* including the right to contract for a closed or union shop. (See, e.g., Pub. Util. Code, §§ 25051-25057.)" (54 Cal.App.3d at p. 766, italics added.)

Consequently, if the BART Act permits an agency shop agreement, nothing in the MMBA supersedes that authorization. The cases cited by appellants in support of their argument that the agency shop agreement is inconsistent with the MMBA's prohibition and therefore invalid are inapposite, as they involve the adoption by a *local* agency of a rule or regulation which is in some way inconsistent with the MMBA and not, as here, an arguable conflict between the MMBA and other preexisting *state* law, e.g., *Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 58 [151 Cal.Rptr. 547, 588 P.2d 249] [L.A. County civil service system not exempt from meet and confer requirement of MMBA despite § 3500]; *Huntington Beach Police*

*Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 502 [129 Cal.Rptr. 893] [city resolution making police work schedule nonnegotiable invalid because conflicts with city's obligation under MMBA to meet and confer on wages, hours, etc.]; *Los Angeles County Firefighters Local 1014* v. *City of Monrovia* (1972) 24 Cal.App.3d 289, 295 [101 Cal.Rptr. 78] [city resolution recognizing only one municipal employee organization invalid because conflicts with MMBA].

## II. The BART Act

We now turn to the question of whether the BART Act permits agency shop agreements. From an examination of the BART Act we find no express language permitting agency shop contracts. Public employees in California do not have the right to bargain collectively or to strike absent an enabling statute. (*American Federation of State etc. Employees* v. *County of Los Angeles* (1975) 49 Cal.App.3d 356, 358 [122 Cal.Rptr. 591]; *City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 310 [87 Cal.Rptr. 258].) However, appellants' contention that an agency shop must also be explicitly authorized is incorrect.

Section 28850 of the BART Act provides that the district's board and the accredited representative of the employees shall "bargain in good faith and make all reasonable efforts to reach agreement on the terms of a written contract governing wages, salaries, hours, *working conditions* and grievance procedures...." (Italics added.) Nothing in the act further defines these terms. However, the National Labor Relations Act (hereinafter NLRA), which predates the BART Act, compels collective bargaining with respect to wages, hours, and other *conditions of employment*. (29 U.S.C. §§ 158, 159.) Well before the enactment of the BART Act, the term "conditions of employment" was held to encompass union security provisions (which include agency shop agreements) and as such was among required bargaining subjects. (*National Labor Relations Board* v. *Andrew Jergens Co.* (9th Cir. 1949) 175 F.2d 130, 133; see generally Morris, The Developing Labor Law (1971) pp. 404-409.) Although the NLRA is inapplicable here, when legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in identical language, it will ordinarily be presumed that the Legislature intended that the language used in the later enactment be given a like interpretation. This rule is applicable to state statutes which are patterned after federal statutes. (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad*

*Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905].) Although the state statute refers to "working conditions" as opposed to "conditions of employment," that difference is insignificant.

■ Moreover, an agency shop is a union security provision which is the practical equivalent of the union shop and as such comes within the scope of "collective bargaining" required by the NLRA, unless such an agreement is prohibited by state law. (*Labor Board* v. *General Motors* (1963) 373 U.S. 734 [10 L.Ed.2d 670, 83 S.Ct. 1453]; *Retail Clerks* v. *Schermerhorn* (1963) 373 U.S. 746, 757 [10 L.Ed.2d 678, 685-686, 83 S.Ct. 1461].)

The differences between the NLRA and the BART Act cannot be overlooked. The NLRA spells out employee rights in detail, explicitly guaranteeing the right to refrain from union participation, *except* that such right may be affected by an agreement requiring membership in a union as a condition of employment. (29 U.S.C. §§ 157, 158 (a)(3).) However, the BART Act contains no similar provisions; it merely generally authorizes collective bargaining. But while the BART Act is unfortunately short on specifics, it appears reasonable to conclude that when the Legislature mandated that BART bargain with its employee representatives about working conditions, it implicitly guaranteed BART employees the right to refrain from union participation, *except* insofar as that right is affected by a collective bargaining agreement for a union or agency shop.

Appellants quote from the italicized language in *City of Hayward*, in support of their view: "Statutes governing the labor relations of other public employee groups indicate that *when the Legislature has authorized union security devices, it has done so with explicit language.* Certain public transit district employees have been granted extensive collective bargaining rights, including the right to contract for a closed or union shop. (See, e.g., Pub. Util. Code, §§ 25051-25057.)...[¶]... *Such union security devices as the agency shop must await authorization by the Legislature.*" (54 Cal.App.3d at pp. 766-767.) However, appellants overlook the context of those statements. As has been discussed, the court was confronted with express language in the MMBA declaring the right of public employees to represent themselves individually, and prohibiting interference with their exercise of that right, among others. (Gov. Code, §§ 3502, 3506.) The court held that in the face of those *express* statements, the agency shop was impermissible without explicit authorization. Unlike *Hayward*, the problem here is not

reconciling the agency shop with statutory guarantees which seem to forbid that shop.

■■■ We conclude that the BART Act implicitly permits an agency shop agreement. Therefore, the agreement subject matter of this dispute is not statutorily proscribed.

### III. Agency Shop and the California Constitution

Finally, appellants' contention that an agency shop for public employees violates the California Constitution is without merit. The right to work guaranteed by the California Constitution is not absolute, but may be limited by an agreement that union membership is a condition for employment. (*Internat. Sound Technicians* v. *Superior Court* (1956) 141 Cal.App.2d 23, 29 [296 P.2d 395].) The constitutionality of a statute permitting "agency shop" agreements with government employees was before the court in *Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209 [52 L.Ed.2d 261, 97 S.Ct. 1782]. In upholding the statute the court held that the "differences between public- and private-sector collective bargaining simply do not translate into differences in First Amendment rights." Further, the court held that "'the union security issue in the public sector . . . is fundamentally the same issue . . . as in the private sector. . . . No special dimension results from the fact that a union represents public rather than private employees.' [Citation.]" (*Id.*, at p. 232 [52 L.Ed.2d at p. 282].) We find no right conferred by California Constitution, article I, section 1,[1] which compels a different result.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

[1]California Constitution, article I, section 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."