[Civ. No. 45160. Second Dist., Div. Two. June 25, 1975.]

AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, LOCAL 119,
Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Warren, Adell & Miller and Hirsch Adell for Plaintiff and Appellant.

John H. Larson, County Counsel, Daniel C. Cassidy and Joe Ben Hudgens, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—Appellants, Local 119 of the American Federation of State, County and Municipal Employees (Union) petitioned the superior court to issue a peremptory writ mandating respondents, the County of Los Angeles and its department of personnel (County) to negotiate with Union in respect of job classifications. The trial court denied the writ and this appeal follows.

■ Public employees as distinguished from private employees in California do not have the right to bargain collectively or to strike absent an enabling statute. (*City of San Diego* v. *American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 311 [87 Cal.Rptr. 258]; *Almond* v. *County of Sacramento* (1969) 276 Cal.App.2d 32 [80 Cal.Rptr. 518].) In 1968 the state enacted the Meyer-Milias-Brown Act (MMBA) (Gov. Code, §§ 3500-3510) which authorized public employees to bargain with governmental entities and encouraged the entities to negotiate and consult with its employees. (*Almond* v. *County of Sacramento, supra.*)

■ County in 1968, conforming to the legislative policy of MMBA enacted Ordinance 9646 entitled Employees Relations Ordinance (ERO). Section 7 of ERO creates a commission of three herein referred to as ERCOM, to administer its provisions. (*Los Angeles County Employees Assn., Local 660* v. *County of Los Angeles* (1973) 33 Cal.App.3d 1, 3 [108 Cal.Rptr. 625].)

Union's petition for the peremptory writ alleged that County refused to negotiate with Union on the subject of job classification as required by ERO and thus had violated section 12(a)(3) of ERO.

Pursuant to procedure provided in ERO, ERCOM appointed a hearing officer. The hearing officer reported to ERCOM, ratifying

Union's position, and ERCOM, by a two to one vote, agreed with Union and ordered County to comply. County refused, whereupon Union petitioned for the writ above referred to. The soundness of the judgment denying the petition requires an analysis of the statutory rights of the parties.

Section 2 of ERO states the policy which inspired its enactment as: ". . . to promote the improvement of personnel management and relations between . . . County and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and services of County government." ERO further states that this policy is carried out by recognizing the rights of employees to join organizations of their own choosing to represent them in matters concerning employee relations with the County.

Section 5 of ERO clarifies certain rights exclusive to County as "management rights," which include: determination of the mission of each of its departments; the standards of the services to be offered, and measures for disciplinary action. The section also provides that notwithstanding County's retention of "management rights" nothing shall prevent employees or their representatives from ". . . conferring[1] or raising grievances about the practical consequences that decisions on these matters may have on wages, hours, and other terms and conditions of employment." The preceding section 4 makes a reservation of rights to employees.

Section 6 of ERO makes a distinction of decisive importance at bench between consultation and negotiation.[2] Section 6(a) restates subjects

---

[1]Under section 3(d) of ERO, the word "confer" is a word of art and is defined as ". . . to communicate verbally or in writing for the purpose of presenting and obtaining views or advising of intended actions."

[2]Section 3(o) of ERO defines negotiation as: ". . . performance by duly authorized management representatives and duly authorized representatives of a certified employee organization of their mutual obligation to meet at reasonable times and to confer in good faith with respect to wages, hours, and other terms and conditions of employment, and includes the mutual obligation to execute a written document incorporating any agreement reached. This obligation does not compel either party to agree to a proposal or make a concession. Agreements concerning any matters within the exclusive jurisdiction of the Board of Supervisors or concerning any matters not otherwise delegated by the Board shall become binding when executed by the Board of Supervisors and affected certified employee organizations. Agreements concerning matters within the exclusive jurisdiction of management representatives, or otherwise delegated to them by the Board, shall become binding when executed by said affected management representatives and affected certified employee organizations."

which the parties may consult or confer on, including subjects *not* subject to negotiation. Section 6(b) provides: "The scope of negotiation between management representatives and the representatives of certified employee organizations includes wages, hours, and *other terms and conditions of employment* within the employee representation unit." (Italics added.)

Section 6(c) provides: "Negotiation shall not be required on any subject preempted by Federal or State law, or by County Charter, nor shall negotiation be required on Employee or Employer Rights as defined in Sections 4 and 5 above. Proposed amendments to this Ordinance are excluded from the scope of negotiation." Section 16(b) reiterates: "Nothing in this Ordinance shall be construed to deny any person or employee the rights granted by Federal and State laws and the County Charter provisions."

The rights of preemption stated in ERO originate in the legislative policy stated in the opening section of MMBA, to wit, section 3500 of the Government Code, which states in pertinent part: ". . . Nothing contained herein shall be deemed *to supersede the provisions* of existing state law and the *charters,* ordinances *and rules of local public agencies which establish and regulate a merit or civil service system* or which provide for other methods of administering employer-employee relations *nor is it intended that this chapter be binding upon those public agencies which provide procedures* for the administration of employer-employee relations in accordance with the provisions of this chapter. This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed." (Italics added.)

In fact, ERO and County charter provisions preempt the subject of job classification to the civil service commission. Nothing in ERO remotely suggests that its provisions were intended to *supersede* specific provisions of the County charter which fixes authority of job classification in the civil service commission.

Article XI, section 3(a) of the California Constitution provides in pertinent part: "For its own government, a county . . . may adopt a charter by majority vote of its electors voting on the question . . . . County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith. . . ."

Article IX of the charter (§§ 30-44.7) mandates that the County have a civil service commission to administer a civil service merit system for County personnel. Section 34 of the charter reads in pertinent part: "The [Civil Service] Commission shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law . . . .

"The rules shall provide:

"(1) For the classification of all positions in the classified service . . . ."

Pursuant to section 34 of the charter, the civil service commission has enacted rule 6 which provides that the commission shall classify employees on the basis of studies for which the director of personnel is responsible. Rule 6 is an elaborate and detailed set of printed regulations, applying to job classification. Such rules adopted within and pursuant to a charter provision have the same force as charter provisions. (*Campbell* v. *City of Los Angeles* (1941) 47 Cal.App.2d 310 [117 P.2d 901].)

Thus, as a consequence of ERO, County has two commissions dealing with County employment matters—a civil service commission established by the County charter and ERCOM created by section 7 of ERO.

The dispute before us specifically involves Union's request that County conduct a reclassification study on 145 employee-members of Union. A study was completed by the director of personnel and submitted to County's civil service commission after which the civil service commission reclassified the positions of 34 of the 145. Of the 34, 16 were reclassified downward, 6 were reclassified upward, and 12 were reclassified laterally, i.e., moved to other positions in different units of County.[3]

Pragmatically, the record shows that although civil service commission did not negotiate, it did advise Union and furnish a copy of the investigation and study to Union before it acted on the study. Appellants assert that the clause in section 6(b) of ERO "other terms and conditions of employment" includes negotiation on job classification. County asserts

---

[3]The 16 employees who were reclassified downward did not have to take a pay cut since by civil service regulation their pay is held constant until the other members of the class to which they have been assigned catch up.

that ERO was enacted in response to the legislative objective which inspired the enactment of MMBA by the state; County follows that objective, and as is expressly permitted by MMBA and section 6(b) of ERO, it has preempted job classification, to the end that ERO would not supersede a subject matter, jurisdiction of which has been reserved to the civil service commission, in accordance with rules enacted by that commission. In brief, County asserts that since section 6(b) does not specifically include job classification for which its charter has specific provisions, it is not included and that the charter and ERO section 6(b) must be read together and that section 6(c) of ERO does, in fact, mandate such reading.

County's position is further fortified by section 23¾ of the charter which provides in pertinent part: "The Director of Personnel shall be appointed and perform duties as provided in Article IX hereof."

Section 3(m) of ERO defines: " 'Management representative' means a department head as defined in Section 22.5 of Ordinance No. 4099, the Administrative Code of the County of Los Angeles, and includes the Chief Administrative Officer and the Director of Personnel, or any duly authorized representative of such department head or officer."

Under the County charter the director of personnel has many rights and duties affecting employee relations but he did not and does not have rights or duties with respect to job classification, except to make a study thereof, and he never exercised or claimed any.

There can be no doubt that ERO does require the director of personnel to negotiate with Union in respect of many of the personnel functions with which he is charged, but it should be noted that the same section which authorizes the director to exercise certain functions deletes those which are the responsibility of the civil service commission.

When ERO, section 3(m) was enacted, it is only fair to assume that its authors, when they specified the director of personnel of the County as one of two County representatives to deal with Union, were fully cognizant of the fact that he had no authority with respect to job classification.

Ignoring any analysis of the statutes involved, Union insists that job classification constitutes a "term or condition of employment" within the

meaning of section 6(b), and cite *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971], asserting that *Vallejo* is on all fours with the action at bench and mandates such construction. We accept the doctrine of construction enunciated by *Vallejo,* but in our opinion it has no application to the facts at bench.

In *Vallejo* the court interpreted a provision in the charter of that city which required arbitration of disputes affecting public employees, and the court was called upon to reconcile clauses in the charter which " 'grants city employees the right to bargain on wages, hours and working conditions but withholds that right as to matters involving the merits, necessity or organization of any governmental service.' " Fire fighters and Vallejo during the negotiations of a contract in 1971 failed to agree on 28 issues and after submitting to mediation and fact finding "pursuant to a process prescribed in the charter" which aborted, Vallejo agreed to submit 24 of the issues to arbitration, but contended that the other 4 issues, "Personnel Reduction," "Vacancies and Promotions," "Schedule of Hours," and "Constant Manning Procedure," involved " 'merits, necessity or organization' of the fire fighting service . . ." and were not arbitrable. The Supreme Court in *Vallejo* demonstrates that the four subjects of dispute were embraced and involved within the charter's language "wages, hours and working conditions" and were not necessarily excluded by the charter's saving clause of "merits, necessity or organization of governmental service."

The *Vallejo* court did not have before it the question that Fire Fighters were attempting to supersede a specific charter provision or that Fire Fighters were ignoring preemptions in a separate ordinance which if read together with a charter created reservations and preemptions as to particular subjects of bargaining. The court in *Vallejo* dealt only with a question of construction, free of provisions in a charter which set forth specifically any of the four subjects upon which city refused to arbitrate. There is no contention in *Vallejo* that city refused to arbitrate on the ground that its charter contained specific language for the disposition of disputes which involved "Personnel Reduction," "Vacancies and Promotions," "Schedule of Hours," and "Constant Manning Procedures" or any of said subjects. At bench the opposite is true. As pointed out above, MMBA and ERO specifically provide that a governmental body, when it enacts legislation to permit union bargaining, may by preemptions reserve subject matter from negotiations. At bench we are of the opinion that job classification was clearly excepted.

It is no answer to argue as Union does that the civil service commission (as Union concedes) retains final approval of the results of any negotiation completed under the auspices of ERCOM. (*Schecter* v. *County of Los Angeles* (1968) 258 Cal.App.2d 391 [65 Cal.Rptr. 739].) It is clear from the provisions of section 3(o)(fn. 2) that negotiations structured on good faith do not compel ". . . either party to agree to a proposal or to make a concession" but they do include "the mutual obligation to execute a written document incorporating the agreement reached."

For reasons irrelevant here, County when it enacted ERO determined that the interests of County government would be best served, for the time being at least, if the civil service commission retained job classification free of negotiation, as defined in section 3(o), with Union.

We do not decide that when civil service commission makes job classification that "wages, hours and other terms and conditions of employment" within the job classifications are not subject to negotiation. On this latter subject, the director of personnel does, under the provisions of the Charter, have authority to negotiate.

The judgment denying the peremptory writ is affirmed.

Compton, J., and Beach, J., concurred.