[Civ. No. 67242. Second Dist., Div. Four. June 22, 1983.]

UNION OF AMERICAN PHYSICIANS AND DENTISTS,
Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

---

**COUNSEL**

Levy & Goldman and Lawrence Rosenzweig for Plaintiff and Appellant.

John H. Larson, County Counsel, and Steve Houston, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**McCLOSKY, Acting P. J.—**

STATEMENT OF THE CASE

This is an appeal from a judgment entered on February 1, 1982, denying a petition for peremptory writ of mandate filed by appellant, Union of American Physicians and Dentists (Union). By its petition, appellant sought an order compelling the County of Los Angeles (County) to comply with a decision of the Los Angeles County Employee Relations Commission (Commission) that required the County to bargain in good faith with the Union with respect to certain employees of the Los Angeles Department of Mental Health.

The County filed an answer to the petition for peremptory writ of mandate and points and authorities in opposition to the petition, but neither filed a petition seeking judicial review of the merits of the Commission decision, nor submitted the administrative record to the court.[1]

On February 2, 1979, the Union petitioned the Commission for the creation of a bargaining unit consisting of supervisory and certain nonsupervisory physicians employed by the Los Angeles County Department of Mental Health. On July 27, 1979, the Commission issued its decision granting the unit determination sought by the Union and ordering an election. By its decision, it rejected the County's contentions that the proposed unit would lead to proliferation of bargaining units and would unlawfully include nonsupervisory physician specialists.

The County requested reconsideration of the Commission's decision on August 17, 1979, reiterating the grounds it presented to the Commission in the hearing on the Union's petition. The Commission reaffirmed its decision and order on August 20, 1979.

On October 31, 1979, the County created a new employment classification of senior physician which included former members of the physician specialist classification included in the bargaining unit created by the Commission. On November 13, 1979, an election was conducted in the bargaining unit created by the Commission, and on November 28, 1979, the Union was certified as the majority representative of the unit.

---

[1] In a motion for continuance of the hearing on the petition for writ of mandate, counsel for the County declared that the County might be filing a cross-petition to vacate the Commission's decision, and might file the administrative record with the court, but it did neither.

Thereafter, by letter of July 11, 1980, Philip Stone, deputy director of personnel for County, notified Union that County would not negotiate with respect to the unit in which the Union won the election. On August 4, 1980, the Union filed a charge, pursuant to the employee relations ordinance (No. 9646) (hereafter ordinance or ERO), alleging that the County had violated the ordinance by refusing to negotiate.

A hearing on this charge was conducted on October 31, 1980. When the hearing commenced, the County moved to dismiss the charge on the ground that the bargaining unit was inappropriate.

In a decision dated February 2, 1981, the hearing officer who conducted the hearing rejected the County's motion to dismiss and issued a recommendation sustaining the charge filed by the Union against the County. On April 13, 1981, the Commission adopted the hearing officer's recommendation and ordered the County to begin negotiations with the Union within a period of 30 days from the order.

On May 5, 1981, the County again requested the Commission's reconsideration of its decision. That request was denied by the Commission. The Union then filed this action.

## Issues Presented

1. Does the employee relations ordinance of the County of Los Angeles preclude the County from obtaining judicial review of a Commission decision which holds the County guilty of an unfair employee relations practice?

2. Did the trial court have jurisdiction to order the Commission to reconsider its decision?

3. Does the County have an enforceable duty to bargain with the Union?

## Discussion

### I

The California Legislature enacted a comprehensive scheme creating rights of organization in employees of local public agencies and providing for the resolution of labor disputes between such local public entities and recognized employee organizations. This statutory scheme was enacted in

Government Code sections 3500-3511[2] and is known as the Meyers-Milias-Brown Act (MMBA).

Section 3500 of that act declares that it is the state's policy to recognize the right of public employees to be represented by employee organizations of their choice in their employment relationship with public agencies.

Section 3505 requires governmental agencies to "meet and confer in good faith" regarding matters within the scope of representation. Section 3505.1 requires representatives of governmental agencies and recognized employee organizations to execute a written memorandum of understanding as to any agreements reached as a result of the "meet and confer" process and to submit such agreements to the governing body of the public agency for determination. Once adopted by the governing body, that memorandum becomes "binding" and subject to enforcement by way of mandamus. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 337-338 [124 Cal.Rptr. 513, 540 P.2d 609], cert. den. (1976) 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411].)

No administrative machinery is provided in the MMBA. Section 3507, however, gives local agencies the right, after good faith consultation with representatives of the employee organizations, to promulgate reasonable regulations for the administration of their own labor relations including rules governing the recognition of employee organizations as the representatives of employees in "appropriate" bargaining units. In 1968, conforming to the legislative policy of the MMBA, the County enacted the ordinance to govern the County's employer-employee practices. (See *American Federation of State etc. Employees* v. *County of Los Angeles* (1975) 49 Cal.App.3d 356, 358 [122 Cal.Rptr. 591].)

■ The ordinance of the County of Los Angeles regulates labor relations between the County and its employees. Section 2(c) of the ordinance provides that the ordinance creates "an independent Employee Relations Commission to ensure that all County employees and their representatives are fairly treated, that their rights are maintained and that their requests are fairly heard, considered and resolved." Section 7 of the ordinance creates the Commission to administer its provisions. (*American Federation of State etc. Employees* v. *County of Los Angeles, supra,* 49 Cal.App.3d 356, 358.) Among its other duties and powers, it is authorized to determine appropriate employee representative units and to determine whether the County or employee organizations have committed an unfair employee relations practice.

---

[2]All statutory references are to the Government Code unless otherwise noted.

Section 8 of the ordinance establishes criteria to be used in determining the "appropriate" employee representation units. That section also establishes a procedure through which employee organizations may petition to be the representative of a unit of employees.

Section 9 of the ordinance provides that only employee organizations certified as majority representatives of "appropriate" employee representation units shall be entitled to negotiate on wages, hours and other terms and conditions of employment for such units.

The Commission's functions under the ordinance include, among other things, authority to conduct hearings into alleged unfair labor practices such as a refusal to negotiate by either the County or a certified employee organization on a negotiable matter.

In pertinent part, section 12 of the ordinance, which establishes unfair employee relations practices, provides:

"(a) It shall be an unfair employee relations practice for the County: . . .

"(3) To refuse to negotiate with representatives of certified employee organizations on negotiable matters."

Section 12(e) of the ordinance authorizes the Commission, in the event it finds that the County has committed an unfair employee relations practice, to impose a binding order upon the County directing it to take appropriate corrective action. "*Such order shall be binding on the County* [subject to certain inapplicable exceptions]." (See ERO, § 12(e)(1); italics added.) If the County fails to comply with the binding order of the Commission, an aggrieved party may petition the superior court for a writ of mandate to enforce the order.

If the Commission determines that the ordinance has been violated, it may issue a cease and desist order against the offending party which must be obeyed "to the extent that" compliance is required by state law or the ordinance. (ERO, § 12.) There are no comparable unfair labor practice provisions in the MMBA. Actions taken pursuant to the MMBA are to be interpreted in light of the purposes of the act stated in section 3500 including the stated intent of the Legislature to provide "a reasonable method of resolving disputes regarding wages, hours and other terms and conditions of employment between public employers and public employee organizations."

Thus, in exercising the discretion given to it by the MMBA, the County has decided that the Commission will be the final authority in its unit determination decisions and in adjudicating the rights of the County in unfair employee practices situations.

After correctly concluding that the ordinance does not authorize direct judicial review of Commission "unit" decisions in employee representation disputes (conclusion of law No. 3), the trial court concluded that in order to obtain judicial review of the Commission's bargaining unit order, the County had to refuse to negotiate and then raise the inappropriateness of the unit determination issue as a defense to any subsequent unfair practice proceeding (conclusion of law No. 4).

Respondents did raise their concern about the appropriateness of the "unit" determination as a defense when the unfair practice charge was adjudicated. The hearing officer and the Commission rejected the County's claims in this regard.

The ordinance precludes raising these defenses in the courts as a defense to such a charge. The trial court apparently based its determination by drawing analogies to procedures under the National Labor Relations Act (NLRA). Those analogies are inappropriate where, as here, the language of the County ordinance is substantially different from the language in the NLRA which establishes the procedures for obtaining judicial review thereunder. Because of these differences, reliance upon federal precedent is not warranted. (See *American Federation of State etc. Employees* v. *County of Los Angeles, supra,* 49 Cal.App.3d 356, 363; *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971].)

Section 10(e) and (f) of the NLRA (29 U.S.C. § 160(e) and (f)), expressly provides procedures for obtaining judicial review of a decision of the National Labor Relations Board (Board). Section 10(e) of the NLRA authorizes the Board to petition any court of appeals of the United States for the enforcement of unfair labor practice decisions.

Similarly, section 10(f) of the NLRA provides, in pertinent part: "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside."

Thus, an unfair labor practice proceeding that goes through the Board may, by express provisions of the NLRA, be brought to the courts by the Board itself or one of the parties. As a result, an employer challenging the appropriateness of a bargaining unit may refuse to bargain in order to litigate the unit question in the courts.

Similarly, unfair practice decisions of the Public Employment Relations Board of the State of California are subject, by statute, to judicial review. Section 3542, subdivision (a)(2) states, in pertinent part: "No employer or employee organization shall have the right to judicial review of a unit determination except . . . (2) when the issue is raised as a defense to an unfair practice complaint."

Section 3542, subdivisions (b) and (c) authorizes any charging party, respondent, or intervener to seek judicial review of an unfair practice decision. Section 3542, subdivision (d) authorizes the Public Employment Relations Board itself to seek enforcement of an unfair practice decision in the event there has not been compliance with the decision nor any request for judicial review. If the Public Employment Relations Board seeks enforcement, review is limited as follows:

"If, after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person or entity refuses to comply with the order, the court shall enforce such order by writ of mandamus. The court shall not review the merits of the order."

Respondents concede on page 6 of their brief that "[u]nlike ERO Section 12(e), which expressly sanctions judicial scrutiny of final [Commission] unfair labor practice orders, no provision of the Ordinance authorizes direct judicial review of Commission unit determination decisions in employee representation disputes." In fact, no direct or indirect judicial review of such determination is provided in the ordinance.

The County goes on to contend that because no Commission or judicial decisions specifically address the issue, precedents under NLRA may be analogized to, or looked to as guidelines with which to interpret the ordinance. We disagree.

The NLRA expressly and specifically provides the procedures which are so significantly omitted from the ordinance provisions with regard to judicial review of unit determination. What respondents seek from us, though de-

nominated an "interpretation" of the ordinance, is in effect judicial legislation to supply those omitted provisions.[3]

The County, in enacting the ordinance, had a perfect right to provide for such procedures. It did not do so, though it provided for judicial review of the Commission's unfair labor practice decisions in other areas. (See, e.g., ERO, § 12(e).) If legislative correction suggests itself, it must be undertaken by the appropriate legislative body and not by the courts.

We conclude, in the absence of such provision paralleling that in federal and other state statutes, that the County was precluded from challenging the adverse unit determination decision of the Commission in the courts in the manner it did.

II

Section 16(c) of the ordinance provides: "The rights, powers and authority of the Board of Supervisors in all matters, including the right to maintain any legal action, shall not be modified or restricted by this Ordinance."

From this language and from that of section 12 of the ordinance, respondents contend that it is "axiomatic" that the County had a right to maintain or defend any legal action brought pursuant to the provisions of Code of Civil Procedure section 1085. Whether or not County had a *right* to bring or maintain such action as to the unit determination is not in point, for the County brought no such action to seek a judicial review of its bargaining unit determination or of the Commission's unfair practice decision in order to obtain a judicial review of the unit determination question. The petition for a peremptory writ of mandate was filed, not by the County, but by the Union. While the County raised the question of the propriety of the Commission's unit determination as a defense, it neither affirmatively sought judicial review of that unit determination, nor did it present to the superior

---

[3]Compare with *Fire Fighters Union* v. *City of Vallejo, supra*, 12 Cal.3d at pages 615-617; *Social Services Union* v. *Board of Supervisors* (1978) 82 Cal.App.3d 498, 501 [147 Cal.Rptr. 126]; *Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802 [165 Cal.Rptr. 908]; *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 500-503 [129 Cal.Rptr. 893]; *Los Angeles County Firefighters Local 1014* v. *City of Monrovia* (1972) 24 Cal.App.3d 289, 294-295 [101 Cal.Rptr. 78]. See also *Alameda County Assistant Public Defenders Assn.* v. *County of Alameda* (1973) 33 Cal.App.3d 825 [109 Cal.Rptr. 392], wherein the court stated at page 829: "The language of 'an appropriate unit' in Government Code section 3507 *parallels the language of the National Labor Relations Act,* section 9(a), allowing the National Labor Relations Board to certify labor organizations selected by the majority of employees in a 'unit appropriate for such purposes, . . .' (29 U.S.C.A. § 159.)" (Italics added.)

court the administrative hearing transcript for the trial court's review of the bargaining unit issues.

Nothing could be better calculated to frustrate the purpose of the ordinance than to encourage a refusal to bargain in good faith and in its place to encourage litigation with the attendant delays and disharmony in employer-employee relations inherent in such a setting. We have already dispositively discussed the binding nature of the unit determination by the Commission. We accordingly conclude that respondents' contentions in that regard are meritless and that the trial court incorrectly concluded by conclusion of law No. 4 that the County had to refuse to negotiate and then raise the inappropriateness of the unit determination issue as a defense to any subsequent unfair practice proceeding in order to obtain judicial review of the Commission's bargaining unit order.

### III

We similarly find meritless respondents' contentions that "neither the hearing officer nor the Commission was called on to make a factual determination within their quasi-judicial function but rather to decide a question of law under the ordinance." The record on appeal fails to bear out that contention.

As we stated in *Los Angeles County Employees Assn., Local 660* v. *County of Los Angeles* (1973) 33 Cal.App.3d 1 [108 Cal.Rptr. 625], the appropriate way to compel the County to comply with a Commission order is by a petition for mandamus such as the Union sought here. The trial court, not having before it any pleading seeking affirmative relief, lacked statutory or decisional authority for its order remanding the matter to the Commission for reconsideration.

In view of the dispositive nature of our foregoing conclusions, we need not, and do not, discuss the other contentions of the parties.

The judgment denying a peremptory writ of mandate is reversed.

Ackerman, J.,* and Lachs, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.