TO BE PUBLISHED IN THE OFFICIAL RECORDS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 89-1203 |
| of | : | |
| | : | APRIL 11, 1991 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE BARRY KEENE, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

May the city council of a charter city require that all discussions between elected city officials and city employees or representatives of city employee organizations concerning matters within the scope of representation during the meet and confer process be held at a public meeting of the city council except for those held between the duly designated representatives?

CONCLUSION

The city council of a charter city may not require that all discussions between elected city officials and city employees or representatives of city employee organizations concerning matters within the scope of representation during the meet and confer process be held at a public meeting of the city council except for those held between the duly designated representatives.

ANALYSIS

The present inquiry concerns the extent to which a city may regulate its employment relations. Specifically, it must be determined whether a charter city may prohibit all pertinent communication between an employee or employee organization representative and an elected city officer during the meet and confer process, except for (1) the negotiating sessions of the duly designated representatives and (2) discussions held at a public meeting of the city council. We conclude that a charter city may not restrict these "meet and confer" subject matter discussions to those between the designated representatives or held at a public meeting.

Besides the city in question, we note that another city has the following two ordinance provisions:

"During the Meet and Confer process for the adoption of a Memorandum of Understanding, it shall be an unfair practice for an elected City Official, or a classified employee, or any employee, or any person who might reasonably be inferred to be a representative thereof, other than the City's duly designated and appointed employee relations representative, to discuss, attempt to discuss, consult, advocate or meet and confer with an employee organization representative, or a person who might reasonably be inferred to be a representative thereof, on any matter within the scope of representation regarding wages, hours, and other terms and conditions of employment at other than a public meeting of the City Council.

"During the Meet and Confer process for the adoption of a Memorandum of Understanding, it shall be an unfair labor practice for an employee organization representative or a member of such employee organization, or a person who might reasonably be inferred to be a representative thereof, to discuss, attempt to discuss, consult, advocate or meet and confer with an elected city official, or a classified employee, or any person who might reasonably be inferred to be a representative thereof, other than the City's duly appointed and designated employee relations representative, on any matter within the scope of representation regarding wages, hours and other terms and conditions of employment at other than a public meeting of the City Council or by written correspondence directed to the City Manager for transmittal to the City Council."

A third city has the following two ordinance provisions:

"It shall be an unfair labor practice for any officer of the City and County or any aide or administrative assistant of any officer of the City and County to meet and confer, or to attempt to meet and confer with an employee, an employee organization, or an employee representative, or any agent thereof, other than at a scheduled public meeting of the Board of Supervisors or a committee meeting of the Board of Supervisors, on matters which the Employee Relations Director has been duly authorized to meet and confer on by an appropriate officer, board or commission of the City and County.

"It shall be an unfair labor practice for any employee, an employee organization, an employee representative, or any agent thereof, to meet and confer or attempt to meet and confer with any officer, aide or administrative assistant to an officer of the City and County other than at a scheduled public meeting of the Board of Supervisors or a committee meeting of the Board of Supervisors, on matters which the Employee Relations Director has been duly authorized to meet and confer on by an appropriate officer, board or commission of the City and County."

A.  THE MEYERS-MILIAS-BROWN ACT

Preliminarily, we examine the general provisions of the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510; "MMB Act")[1] governing negotiations with respect to employment relations by local public agencies. Under the MMB Act, public employees are assured the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employment relations. (§ 3502.) Recognized employee organizations have the right to represent their members. (§ 3503.) The governing body of a public

---

[1]All section references are to the Government Code unless otherwise specified.

agency, or its designated officers or representatives, must meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of a recognized employee organization, and must consider fully such presentations as are made by the organization on behalf of its members prior to arriving at a determination of policy or course of action. (§ 3505.)

To "meet and confer in good faith" is defined in section 3505 as follows:

"`Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent."

In *Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55, 61-62, the Supreme Court stated with respect to the requirements of section 3505:

"Thus a public agency must meet with employee representatives (1) promptly on request; (2) personally; (3) for a reasonable period of time; (4) to exchange information freely; and (5) to try to agree on matters within the scope of representation. Though the process is not binding, it requires that the parties seriously `attempt to resolve differences and reach a common ground.' (*Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 25.) The public agency must fully consider union presentations; it is not at liberty to grant only a perfunctory review of written suggestions submitted by a union."

As for a city's or county's authority to adopt rules and regulations in administering the MMB Act, section 3507 provides in part:

"A public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of an employee organization or organizations for the administration of employer-employee relations under this chapter (commencing with Section 3500)."

Pursuant to section 3507, "local government agencies [have] the power to establish and enforce rules governing relations with their own employees." (*International Brotherhood of Electrical Workers* v. *City of Gridley* (1983) 34 Cal.3d 191, 197; see *Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 814.)

The rule-making authority of a local agency may not, however, be used to "frustrate the declared policies and purposes of the MMB Act." (*Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 502; accord, *People* ex rel. *Seal Beach Police Officers Assn.* v. *City of Seal Beach* (1984) 36 Cal.3d 591, 597; *International Brotherhood of Electrical Workers* v. *City of Gridley, supra*, 34 Cal.3d at 198; *Vernon Fire Fighters* v. *City of Vernon, supra*, 107 Cal.App.3d at 814-815.) In *Huntington Beach Police Off. Assn.* v. *City of Huntington Beach, supra*, 58 Cal.App.3d 492, 503, the court concluded that a city acted improperly in adopting a resolution in direct conflict with the MMB Act by *cutting off* communication between it and its employees concerning a matter within the scope of representation.

The overall purposes of the MMB Act are set forth in section 3500 as follows:

"It is the purpose of this chapter to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations. . . . This chapter is intended . . . to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

B.       CONSTITUTIONAL CONSIDERATIONS

With this statutory background in mind, we turn to the issue of whether the proposed restriction upon discussions held in private would be constitutional or whether specifically it would violate constitutional freedoms of speech and petition.  The First Amendment of the United States Constitution provides:

"Congress shall make no law . . . abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Subdivision (a) of section 2 of Article I of the California Constitution states:

"Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right.  A law may not restrain or abridge liberty of speech or press."

Section 3 of Article I of the California Constitution provides:

"The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

While the First Amendment is applicable to state and local governments through the due process clause of the Fourteenth Amendment (see, e.g., *Edwards* v. *South Carolina* (1963) 372 U.S. 229, 235), the California Constitution is "more definitive and inclusive" in protecting the right of speech and other guarantees of the First Amendment.  (*Robins* v. *Primeyard Shopping Center* (1979) 23 Cal.3d 899, 908; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658.)  Accordingly, we will look first to California case law to determine whether the proposed council restrictions placed upon the rights of speech and petition would violate the California Constitution.

In *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, the Supreme Court considered various restrictions placed upon lobbyists under provisions of the Political Reform Act of 1974.  The court upheld certain of the requirements but found others unconstitutional.  With respect to requiring lobbyists to register, to report payments received for lobbying activities, to describe the objectives of their lobbying activities, and to limit their political gifts to $10 in any month for any candidate or officer, the court stated:

"Among the fundamental rights guaranteed by the First Amendment to the United States Constitution is the right to "petition the Government for a redress of grievances."  The lobbyist's function obviously is to exercise such right on behalf of

his employer. The challenged statutes do not directly limit or restrict the right to petition. Rather, the registration and reporting requirements impose burdens on the right to petition, and the gift limitation affects the form of the petition. All may petition provided they bear the burden of registration and reporting and do not offer excessive gifts.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Although a fundamental interest may be involved, both the United States Supreme Court and this court have recognized that not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny standard. When the regulation merely has an incidental effect on the exercise of protected rights, strict scrutiny is not applied. It is only when there exists a real and appreciable impact on, or a significant interference with the exercise of the fundamental right that the strict scrutiny doctrine will be applied. [Citations.]

"In *United States v. Harriss* (1954) 347 U.S. 612, 625-626, the court upheld the Federal Regulation of Lobbying Act which required lobbyists to report lobbying receipts and expenditures against challenges that it violated the guarantees of freedom to speak, publish, and petition. Pointing out that Congress had not sought to prohibit lobbying, the court concluded that Congress has a valid interest in determining the source of voices seeking to influence legislation and could reasonably require the professional lobbyist to identify himself and disclose his lobbying activities. This court has also upheld reasonable statutes requiring disclosure of financial activities of persons engaged in political processes. [Citations.]

"As pointed out above, the registration, reporting, and gift provisions are not direct limitations on the right to petition for redress of grievances. Application of the burdens of registration and disclosure of receipts and expenditures to lobbyists does not substantially interfere with the ability of the lobbyist to raise his voice. While the burden of disclosure might be substantial for those engaging in extensive lobbying activities, the burden is not great when viewed in the context of the total activities engaged in. Requiring a person engaged in a business to describe it and to report its receipts and expenses may not be viewed in our commercial society as a substantial impediment to engaging in that business.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The limitation on lobbyist gifts, affecting only the form of the petition, also does not have a real and appreciable impact on the legitimate exercise of the rights of petition and speech, and the strict scrutiny test is inapplicable." (*Id.*, at pp. 46-48.)

Applying the principles set forth in the *Fair Political Practices* case, we believe that the proposed local regulation would be subject to the "strict scrutiny doctrine," since its application would "have a real and appreciable impact on the legitimate exercise of the rights of petition and speech."

It is true that the employees and officials would be able to discuss their concerns in a public meeting of the city council. This alternative, however, is not sufficient to avoid the strict scrutiny test. In *California Newspaper Publishers Assn., Inc. v. City of Burbank* (1975) 51 Cal.App.3d 50, 54, for example, the court stated the applicable principles as follows:

"Equally without merit are the city's contentions that the ordinance is not unconstitutional on its face because, first, newsracks are not prohibited on private property, and, second, newsracks are permitted on the public Golden Mall. `[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.' (*Schneider v. State* (1939) 308 U.S. 147, 163.) The appropriate focus is on the blanket prohibition and not on those areas left untouched. Thus, in *Wollum v. City of Palm Springs, supra,* 59 Cal.2d 276, the court, in holding invalid an absolute prohibition on the use of stationary sound trucks (*id.,* at pp. 287-288), did not consider the ordinance was redeemed by the fact that moving sound vehicles were to some extent permitted. (*Id.,* at pp. 278-279. See also, *Van Nuys Pub. Co. v. City of Thousand Oaks, supra,* 5 Cal.3d 817, 822; *Young v. Municipal Court,* 16 Cal.App.3d 766, 770-771.)

"The suggestion that access to private facilities would be constitutionally adequate was rejected in *Southeastern Promotions, Ltd. v. Conrad* (1975) 420 U.S. 546, in which Chattanooga officials refused to permit the play `Hair' to be shown in the municipal theatre. (420 U.S. at p. 548.) The Supreme Court was not impressed with the fact that there might be other theatres in town. `Even if a privately owned forum has been available, that fact alone would not justify an otherwise impermissible prior restraint. . . .[¶] Thus, it does not matter for purposes of this case that the board's decision might not have had the effect of total suppression of the musical in the community. Denying use of the municipal facility under the circumstances present here constituted the prior restraint. That restraint was final.' (420 U.S. at pp. 556-557.)"

The strict scrutiny test is applicable even though the proposed prohibition would only apply to a limited number of persons. In *Henrico Professional Firefighters v. Bd. of Sup'rs* (4th Cir. 1981) 649 F.2d 237, the court considered whether a local board could allow comment by individuals and representatives of associations but "deny the opportunity to be heard to a representative of an employee association." (*Id.,* at p. 241.) The court ruled:

"When governmental action deprives a person or organization of the right to communicate its views, but at the same time allows other persons or organizations to speak, the Supreme Court sometimes analyzes the case under the First Amendment, and sometimes under the Equal Protection Clause of the Fourteenth Amendment. [Citation.] Governmental action permitting some to speak, but denying the opportunity to others, raises an `equal protection claim ... [that] is closely intertwined with First Amendment interests.' [Citation.]

"In any event, under either the First or the Fourteenth Amendment, the determination that a fundamental interest in speech has been abridged requires the government in cases such as the one at hand to advance a compelling justification for denying a particular person or entity the opportunity to speak....

"The Supreme Court has long held that public employees may not `be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public [institutions] in which they work.' [Citation.]"

The strict scrutiny test is applicable even though the proposed prohibition is directed at "lobbying" activities concerning economic and labor relations issues. In *Moffett v. Killian* (D. Conn. 1973) 360 F.Supp. 228, 231, the court stated:

"The mere fact, however, that one earns a living by exercising First Amendment rights does not vitiate the ability to assert those rights....

"Furthermore, one does not forfeit First Amendment rights because he pays someone to exercise them for him."

In *Fritz v. Gorton* (1974) 83 Wash.2d 175 [517 P.2d 911, 929], the Washington Supreme Court concluded:

"That right to petition, of course, is not limited to mass demonstrations, highly publicized in newspaper headlines and in television news reports.... We take special and emphatic notice of the fact that lobbyists perform important and constructive functions in communicating the wishes of the interests they represent to the appropriate organs of government. In our opinion, the role of the lobbyist ... is clearly assured and protected by the first amendment right to petition government."

In *Henrico Professional Firefighters v. Bd. of Sup'rs, supra*, 649 F.2d at 246, the court said with respect to the "economic" content of the speech in question:

"Finally, that the proposed communication happens to involve a local problem rather than a `public issue,' and advances `economic' rather than `political' interests, does not remove the shield of the First Amendment. As has been stated by Chief Judge Haynsworth, it is no answer to `equate the petition here involved with internal bickering between an employer and his employee. The First Amendment is not limited in its protection to issues of great social and political impact, ... and [the Association's] petition should not be denied such protection simply because it deal[s] with matters of a local nature.' [Citation.] `The grievances for redress of which the right of petition was insured' are not confined to religious or political causes, but include other fields of human interest, including business, labor, or economic activity. [Citation.]" (Fn. omitted.)

Applying the strict scrutiny test, then, we find that it requires the governmental interest sought to be advanced to be a compelling one, and the restriction must be narrowly focused so as to "operate without unnecessarily circumscribing protected expression." (*Brown v. Hartlage* (1982) 456 U.S. 45, 54; see *Police Dept. of Chicago v. Mosley* (1972) 408 U.S. 92, 101; *Shelton v. Tucker* (1960) 364 U.S. 479, 488; *Thornhill v. Alabama* (1940) 310 U.S. 88, 96.)

What is the "compelling justification" for the proposed ban in question? Would, for example, the confidential discussions adversely affect the negotiations taking place at the meet and confer sessions? As previously noted, the primary goal of the MMB Act is "to promote full communication between public employers and their employees." (§ 3500, emphasis added.) It has not been demonstrated here that too much discussion would be harmful to the collective bargaining process.

Moreover, the "discussions" in question would not necessarily be "negotiations" at all. In *Madison Sch. Dist. v. Wisconsin Emp. Rel. Comm's* (1976) 429 U.S. 167, the Supreme Court distinguished between a school teacher presenting his views at a school board meeting and "negotiations" held in a collective bargaining session. The court stated:

"Holmquist did not seek to bargain or offer to enter into any bargain with the board, nor does it appear that he was authorized by any other teachers to enter into any agreement on their behalf. Although his views were not consistent with those

of MTI [the teachers' union], communicating such views to the employer could not change the fact that MTI alone was authorized to negotiate and to enter into a contract with the board.

"Moreover the school board meeting at which Holmquist was permitted to speak was open to the public. He addressed the school board not merely as one of its employees but also as a concerned citizen, seeking to express his views on an important decision of his government." (*Id.*, at pp. 174-175, fn. omitted.)

Similarly, in *Henrico Professional Firefighters v. Bd. of Sup'rs, supra*, 649 F.2d at 244, the court concluded:

"Consequently, the Board's position in the instant case is defective because it equates advocacy with negotiation. The present case involves the right of the Association to speak on behalf of its members, not to force the Board to arbitrate or negotiate with it concerning labor grievances. [Citation.]

"Similarly, although here the subject of the Association's contemplated speech apparently concerns complaints of firefighters about the County's handling of `heart-lung' disabilities, the mere presentation of the Association's position on that issue does not constitute `negotiation' or `grieving.' No direct back-and-forth dealing is contemplated here. Nor has the Association demanded that a special grievance meeting be set up for it. The Association claims no right to be the employees' exclusive representative, or to be designated the employees' agent for resolving particular employer-employee disputes. `Representation' in the labor context means, of course, something more extensive, more exclusive and more enduring than the simple `representation' involved in standing up to speak on another's behalf." (Fn. omitted.)

Even assuming the charter city in question may have a compelling interest in regulating labor discussions with its employees, the proposed prohibition on speech must still meet the "narrowly drawn" requirement of the strict scrutiny test. In the lobbyist cases, for example, disclosure requirements were upheld only where they "indirectly" and "not substantially" affected the rights of speech and petition. (See *Fair Political Practices Com. v. Superior Court, supra*, 25 Cal.3d at 47.)

We do not find here, however, such justifiable precision and narrow focus. Alternatives less obtrusive may well suffice to meet the needs of the city. A "zealous solicitude for rights falling within the protection of the First Amendment" (*Burton v. Municipal Court* (1968) 68 Ca.2d 684, 691) has not been demonstrated. Rather, there appears to be a lack of "perception that free discussion concerning the issues involved in a labor dispute is ... `indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society.'" (*Pittsburgh United School Dist. v. California School Employees Assn.* (1985) 166 Cal.App.3d 875, 888-889, quoting *Thornhill v. Alabama, supra*, 310 U.S. at 103; see also, *Brown v. Hartlage, supra*, 456 U.S. at 52; *Abood v. Detroit Board of Education* (1977) 431 U.S. 209, 230-231; *Mills v. Alabama* (1966) 384 U.S. 214, 218-219; *Eastern R.R. Conference v. Noerr Motor Freight* (1961) 365 U.S. 127, 137-138.) While collective bargaining laws must be administered in a manner to accomplish their salutary purposes, "it is even more imperative that the labor relations laws, particularly when promulgated by the self-interested public employer, cannot substitute for the First Amendment." (*Henrico Professional Firefighters v. Bd. of Sup'rs, supra*, 649 F.2d at 244.)

It has not been established that the proposed ban on discussions between city employees and officials meets the compelling interest or narrowly tailored requirements of the strict scrutiny test. We thus conclude that the city council of a charter city may not require that all discussions between elected city officials and city employees or representatives of city employee organizations concerning matters within the scope of representation during the meet and confer process be held at a public meeting of the city council except for those held between the duly designated representatives.

* * * * *